UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**FLAVA WORKS, INC.**,

        Plaintiff,        Case No:

vs.

**ROJE ON HOLIDAY INC.,** d/b/a Chocolate Drop Entertainment, d/b/a/ ChocolateDrop.com, d/b/a DawgPoundUsa.com, d/b/a DawgPoundUsa Media, d/b/a PapiThugz.com, d/b/a Thugzilla.com, AND
**ANTHONY COLLINS, ROY COLLINS, LADON DODDS JR.**, AND **M. KNIGHT,**

        Defendant.
_____/

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

**COMES NOW,** the Plaintiff, Flava Works, Inc. (hereinafter "Flava Works"), by and through undersigned counsel, and files its Complaint for Equitable Relief and Damages against the Defendant, Roje On Holiday, Inc. (hereinafter "Roje"), d/b/a Chocolate Drop Entertainment, d/b/a/ ChocolateDrop.com, d/b/a DawgPoundUsa.com, d/b/a PapiThugz.com, d/b/a Thugzilla.com (hereinafter collectively "Roje" or individually "Chocolate Drop," "Dawg Pound," "Papi Thugz," or "Thugzilla") and Anthony Collins ("A. Collins"), Roy Collins ("R. Collins"), LaDon Dodds Jr. ("Dodds"), M. Knight ("Knight")(collectively "Defendants"), states and alleges as follows:

### General Allegations Common to All Counts

1) At all times relevant hereto, Plaintiff, Flava Works, was and is a corporation, incorporated under the laws of the State of Florida.

2) At all times relevant hereto, Roje was and is a corporation, incorporated under the laws of the State of New York, doing business in the State of Florida by actively and

purposefully directing its marketing, distribution and/or sales of non-obscene adult-themed erotic material to and within the State of Florida.

3) At all times relevant hereto, A. Collins and R. Collins were/are the owners of Roje and are subject to the jurisdiction of this Court.

4) At all times relevant hereto, Dodds was/is the owner of Thugzilla.com.

5) At all times relevant hereto, M. Knight and Dodds produce content for and have a partnership with Roje.

6) At all times relevant hererto, M. Knight was/is the 18 U.S.C. § 2257 records keeper for Roje.

7) At all times relevant hereto, Cornell Davis, a model working under the stage name "Tyson" (hereinafter "Tyson"), was an individual residing in the State of Florida.

8) At all times relevant hereto, Darrius Everson, a model working under the stage name "Danger Zone" (hereinafter "Danger Zone"), was an individual residing in the State of Florida.

9) At all times relevant hereto, Joseph Fredrick, a model working under the stage name "Chance Jacobs" (hereinafter "Chance Jacobs"), was an individual residing in the State of California.

## Allegations Regarding Model "Danger Zone"

10) Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

11) On January 7, 2008, Danger Zone signed an exclusive modeling contract with Flava Works (hereinafter the "Danger Zone/Flava Works contract"), the terms of which prohibited Danger Zone from performing in a modeling capacity with any company other than Flava Works, and in which Flava Works retained the exclusive right to the use of Danger Zone's name, image and likeness, through the duration of the contract until January 6, 2009.[1] *See* attached Exhibit "A".

12) On June 6, 2008, a press release was published on AVN.com (the website of an adult entertainment industry trade publication) in which Danger Zone was listed as an "exclusive model[]" of Flava Works. *See* attached Exhibit "B".

---

[1] Some of the attached Exhibits may contain images objectionable to the average viewer. In these instances, steps have been taken to black out any possibly offensive imagery.

13) Roje had constructive and/or actual knowledge that Danger Zone was signed to an exclusive modeling contract of an undisclosed duration with Flava Works by virtue of the publication of the above referenced press release on a website that is typically viewed by persons in the adult entertainment industry.

14) On or about August 28, 2008, Roje extended to Danger Zone an offer of employment whereby Danger Zone was to perform in a modeling capacity for Roje; however, even though Roje was on actual and/or constructive notice that Danger Zone had been under an exclusive modeling agreement of an undisclosed duration with Flava Works as of June 6, 2008, Roje did not contact Flava Works with regard to the status of any exclusivity agreement, choosing instead to induce Danger Zone to breach the Danger Zone/Flava Works contract.

15) On or about August 28, 2008, Danger Zone appeared in a modeling capacity on ChocolateDrop.com, under the name "Black Lion.". *See* attached Exhibit "C".

16) On or about August 28, 2008 and before January 6, 2009, Roje realized profits from material containing the name, image and/or likeness of Danger Zone; however, these were profits to which Roje was not entitled, due to the exclusivity agreement between Danger Zone and Flava Works.

### Allegations Regarding Model "Tyson"

17) Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

18) On October 28, 2007, Tyson signed an exclusive modeling contract with Flava Works (hereinafter the "Tyson/Flava Works contract"), the terms of which prohibited Tyson from performing in a modeling capacity with any company other than Flava Works, and in which Flava Works retained the exclusive right to the use of Tyson's name, image and likeness, through the duration of the contract until October 27, 2008. *See* Attached Exhibit "D".

19) On or about January 15, 2008, Roje had actual knowledge of the exclusivity agreement between Tyson and Flava Works. *See* Attached Exhibit "E", Affidavit of Cornell Davis (AKA Tyson).

20) On or about January 15, 2008, Roje extended to Tyson an offer of employment whereby Tyson was to perform in a modeling capacity for Roje; however, even though Roje was

on actual notice that Tyson had been under an exclusive modeling agreement of an undisclosed duration with Flava Works as of January 15, 2008 (on or about), Roje did not contact Flava Works with regard to the status of any exclusivity agreement, choosing instead to induce Tyson to breach the Tyson/Flava Works contract.

21) Sometime after January 15, 2008 and before October 27, 2008, Tyson appeared in a modeling capacity on ChocolateDrop.com, under the name Tyson TKO; sometime after January 15, 2008 and before October 27, 2008, Tyson appeared on DawgpoundUSA.com. See attached Exhibits F for a screenshot of Tyson on ChocolateDrop.com; *see* attached Exhibit "G" for a screenshot of Tyson on DawgpoundUSA.com.

22) Sometime after January 15, 2008 and before October 27, 2008, Roje realized profits from material containing the name, image and/or likeness of Tyson; however, these were profits to which Roje was not entitled due to the exclusivity agreement between Tyson and Flava Works.

## Allegations Regarding Model "Elmo Jackson"

23) Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

24) On January 21, 2008, Jackson signed an exclusive modeling contract with Flava Works (see attached Exhibit H, Elmo Jackson Exclusive Model Contract), the terms of which prohibited Jackson from performing in a modeling capacity with any company other than Flava Works, and in which Flava Works retained the exclusive right to the use of Jackson's name, image and likeness, through the duration of the contract until January 20, 2009.

25) On April 17, 2008, a press release was published on Xbiz.com (the website of an adult entertainment industry trade publication) in which Jackson was listed as an "exclusive model" of Flava Works. *See* Attached Exhibit "I", Xbiz Press Release Concerning Elmo Jackson.

26) Roje had actual and/or constructive knowledge that Jackson was signed to an exclusive modeling contract of an undisclosed duration with Flava Works by virtue of the publication of the above referenced press release on a website that is typically viewed by persons in the adult entertainment industry.

4

27) On September 30, 2008, after negotiating a raise in pay, Jackson entered into a new twelve (12) month exclusive modeling contract with Flava Works (hereinafter "the Jackson/Flava Works contract"), the terms of which prohibited Jackson from performing in a modeling capacity with any company other than Flava Works, and in which Flava Works retained the exclusive right to the use of Jackson's name, image and likeness, through the duration of the contract, September 29, 2009. *See* Attached Exhibit "H", Flava Works, Inc. Exclusive Modeling Agreement No. 2, ¶ 5.

28) Sometime in late 2008, Roje extended to Jackson an offer of employment whereby Jackson was to perform in a modeling capacity for Roje; however, even though Roje was on actual and/or constructive notice that Jackson had been under an exclusive modeling agreement of an undisclosed duration with Flava Works as of April 17, 2008, Roje did not contact Flava Works with regard to the status of any exclusivity agreement, choosing instead to induce Jackson to breach the Jackson/Flava Works contract.

29) In December 2008, despite having actual and/or constructive knowledge of the Jackson/Flava Works contract, Roje shot material for Thugzilla.com (*see* attached Exhibit J for screenshots of Elmo Jackson appearing on Thugzilla.com); thereby interfering with the contractual relations that had been established in the Jackson/Flava Works contract.

30) Sometime after December 2008 and before September 29, 2009, Roje realized profits from material containing the name, image and/or likeness of Jackson; however, these were profits to which Roje was not entitled due to the exclusivity agreement between Jackson and Flava Works.

31) At all times relevant in this complaint, Defendant was engaged in doing business in the State of Florida by actively and purposefully directing its marketing, distribution and/or sales of non-obscene adult-themed erotic material to and within the State of Florida and producing said materials for distribution on its websites in the State of Florida. *See* Attached Exhibit K, Affidavit of Collins indicating website content is produced primarily in the States of Florida and New York.

### Allegations Regarding Model "Chance Jacobs"

32) Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

33) On June 30, 2010, Chance Jacobs signed an exclusive modeling contract with Flava Works (hereinafter the "Chance Jacobs/Flava Works contract"), the terms of which prohibited Chance Jacobs from performing in a modeling capacity with any company other than Flava Works, and in which Flava Works retained the exclusive right to the use of Chance Jacobs's name, image and likeness, through the duration of the contract until June 30, 2011. *See* attached Exhibit "L".

34) Roje had constructive and/or actual knowledge that Chance Jacobs was signed to an exclusive modeling contract of an undisclosed duration with Flava Works by virtue of the publication of the model on www.flavaworks.com/stars where he was listed as an Exclusive Star (he also was listed as the same and featured on Thugboy.com and Cocodorm.com).

35) During August, 2010, Roje extended to Chance Jacobs an offer of employment whereby Chance Jacobs was to perform in a modeling capacity for Roje; however, even though Roje was on actual and/or constructive notice that Chance Jacobs had been under an exclusive modeling agreement of an undisclosed duration with Flava Works as of June 30, 2010, Roje did not contact Flava Works with regard to the status of any exclusivity agreement, choosing instead to induce Chance Jacobs to breach the Chance Jacobs /Flava Works contract.

36) Pursuant to said contract, Flava Works held and does retain a proprietary interest, ownership and exclusive interest in the name "Chance Jacobs".

37) On or about September 17, 2010, Chance Jacobs appeared in a modeling capacity on www.Dawgpoundusa.com, under the name "Chance Jacobs". *See* attached Exhibit "M".

38) On or about September 24, 2010, Roje realized profits from material containing the name, image and/or likeness of Chance Jacobs; however, these were profits to which Roje was not entitled, due to the exclusivity agreement between Chance Jacobs and Flava Works.

39) On or about September 24, 2010, Flava Works sent a cease and desist letter to Chance Jacobs demanding that he cease all improper actions.

40) Said cease and desist letter was wholly ignored and, as of the date of this filing, Roje continues to realize profits and has failed to remove Chance Jacobs name, images, videos, etc. from its websites.

## COUNT I – TORTIOUS INTERFERENCE WITH A CONTRACTUAL RIGHT

41) Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

42) To establish a cause of action for the tort of intentional interference with a contractual right, the following elements must be proven, **(1)** The existence of contract to which plaintiff is a party; **(2)** Defendant's knowledge of the contract; **(3)** Defendant's intentional procurement of the contract's breach; **(4)** The absence of justification or privilege; and **(5)** Plaintiff suffered damages resulting from the breach. *See Fernandez v. Haber & Ganguzza, LLP*, 30 So.3d 644, 646 (Fla. 3d DCA 2010).

43) Valid and enforceable contracts existed between Flava Works and: 1.) William Ratliff, Jr. (aka "Elmo Jackson"); 2.) Cornell Davis (aka "Tyson"); 3.) Darrius Everson (aka "Danger Zone"); and, 4.) Joseph Fredrick (aka "Chance Jacobs").

44) Roje had actual and/or constructive knowledge of these contracts by virtue of the above referenced press releases or otherwise. *See Id.*

45) Roje intentionally and unjustifiably induced Jackson, Tyson, Danger Zone and Chance Jacobs to breach their respective contracts by improperly offering to employ them to perform as models, and by subsequently filming said performances, while it had full knowledge of their valid exclusive model contracts with Flava Works. *See Id.*

46) Roje's wrongful conduct caused the models to breach their contracts with Flava Works by performing in a modeling capacity for a company other than Flava Works and by allowing a company other than Flava Works to use their name, image and/or likeness, a proprietary right which was solely owned by Flava Works for the duration of the respective contracts. *See Id.*

47) As a result of Roje's impropriety of employing Jackson, Tyson, Danger Zone, and Chance Jacobs and filming their performances, and by subsequently releasing said performances over the internet before each model's contract with Flava Works was set to expire, Flava Works was unable to fully realize profits to be made through use of the name, image and/or likeness of its exclusive models, and has suffered damages, the amount of which shall be determined at trial or otherwise as determined by this Court. *See Id.*

## COUNT II – FALSE DESIGNATION OF ORIGIN

48) Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

49) Roje's use of these models' name, image and/or likeness has caused, is causing or is likely to cause, confusion, mistake or deception among the relevant trade and public as to the existence of an affiliation, connection or association between Flava Works and Roje as to the origin, sponsorship or approval of Roje's goods.

50) By engaging in the activities above, Roje has made and is making false, deceptive and misleading representations and false advertising in connection with goods sold in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51) Roje's acts described above have caused irreparable injury to Flava Works' good will and reputation and, unless enjoined by this court, will cause further irreparable injury, for which Flava Works has no adequate remedy at law or, in the alternative, as a result of the injury suffered by Flava Works' business from Roje's actions, Flava Works is entitled to recover statutory damages in an amount equal to threefold the actual damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees.

## COUNT III – VIOLATION OF RICO STATUTE

52) Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

53) Upon information and belief, Roje's actions alleged herein are a continuous pattern of criminal activity constituting wire fraud (*see* 18 U.S.C. § 1343) under the RICO statute, 18 U.S.C. §§1961-1968. As a result of the injury suffered by Flava Works' business from Roje's actions, Flava Works is entitled to recover statutory damages in an amount equal to threefold the actual damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees.

## COUNT IV – UNFAIR COMPETITION

54) Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

55) This is an action for infringement/improper interference and unfair competition against the Defendants based on their improper use of models that were to be exclusively the providence of Flava Works, advertisement, distribution, sale and/or offer for sale goods

8

of the same exclusive models, in violation of Florida's common law of unfair competition.

56) Specifically, the Defendants are improperly utilizing Flava Works models in breach of the exclusivity provision and promoting or otherwise advertising for sale its goods improperly utilizing said models.

57) Defendants' activities are likely to cause and actually are causing confusion, mistake and deception among members of the general consuming public as to the models and Defendants are realizing substantial profits as a result thereof.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, Flava Works, Inc. demands judgment jointly and severally against the Defendants, Roje On Holiday, Inc., d/b/a ChocolateDrop.com, d/b/a Chocolate Drop Entertainment, d/b/a DawgPoundUsa.com, d/b/a PapiThugs.com, d/b/a Thugzilla.com, and Anthony Collins, Roy Collins, LaDon Dodds Jr., M. Knight, as follows:

    a. For a temporary restraining order, preliminary injunction, and permanent injunction against Roje, their officers, agents, servants, representatives, employees, attorneys, parents, subsidiaries, related companies, partners, successors, predecessors, assigns, and all persons acting for, with, by, through, or under them and each of them (including, but not limited to, d/b/a ChocolateDrop.com, d/b/a Chocolate Drop Entertainment, d/b/a DawgPoundUsa.com, d/b/a PapiThugs.com, d/b/a Thugzilla.com, and Anthony Collins, Roy Collins, LaDon Dodds Jr., M. Knight):

        i. Restraining them from selling, and/or making available to rent, any DVD, whether at a physical location in Florida or through a website made accessible in Florida, which contains a depiction or performance, or otherwise contains the name, image and/or likeness, of the models that was produced while the Flava Works exclusivity contracts were still in effect;

        ii. Restraining them from making accessible in Florida, through their websites, ChocolateDrop.com, DawgpoundUSA.com, PapiThugz.com, Thugzilla.com or any affiliate website, any depictions or performances, including pictures, photographs, jpegs, mpegs, avi files or any other type

        of visual or audio media, whether made available by download, streaming or in any other fashion, that has been culled from any works referenced in subsection "a.";

   iii.   Restraining them from tortiously interfering with any of Flava Works, Inc.'s exclusive model contracts in the future;

   iv.   Restraining them from using the name "Danger Zone", "Chance Jacobs", "Elmo Jackson" and/or "Tyson" in any fashion whatsoever;

b. For any applicable statutory damages;

c. For punitive damages;

d. For disgorgement of all gains, profits and advantages derived by Roje On Holiday, Inc. from their acts of tortious interference, misappropriation, fraud, misrepresentation, deceptive practices and unfair competition and other violations of law;

e. For monetary damages according to proof at trial (or otherwise by this Court) sustained by Flava Works, Inc. as a result of Roje's unlawful acts alleged herein;

f. That Defendants be required to account to and pay Plaintiff for all profits and damages resulting from Defendants' activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. § 1117(c), or, at Plaintiff's election, that Plaintiff be awarded statutory damages from each of the Defendants in the amount of one million dollars ($1,000,000.00) for each violation;

g. For all costs and expenses, including, without limitation, reasonable attorney's fees incurred by Flava Works, Inc. in this action;

h. For prejudgment interest at the maximum legal rate; and

i. For such other and further relief as the court deems just and proper.

## Jury Demand

Plaintiff, Flava Works, Inc., hereby demands a jury in any trial that arises from this complaint.

Dated: October 24, 2010

                                        Respectfully submitted,

                                        <u>s/Jonathan J. Warrick</u>
                                        Jonathan J. Warrick, Esq.
                                        Florida Bar No. 37248
                                        Mirta Desir, Esq,
                                        Florida Bar No.: *Pending*
                                        Attorneys for Plaintiff
                                        Flava Works, Inc.
                                        2610 North Miami Ave.
                                        Miami, FL 33127
                                        Email: jon@warricklaw.com
                                        E-mail: mdesir@gmail.com
                                        Facsimile: 305.438.9470